HOBE LUMBER COMPANY v. JAMES E. McGRATH and Another.[1]

July 19, 1907.

Nos. 15,232—(193).

**Breach of Contract—Evidence.**

Plaintiff sought to recover damages for refusal to perform the terms of a written agreement signed by the parties. Before it was signed, plaintiff read the contract to defendants, who did not read it. The defense was that the contract as written was not the contract which defendants intended to execute. The jury found for defendants. It is *held* that, in view of the conduct of defendants subsequent to the discovery of the alleged error, the plaintiff is entitled to a new trial.

Action in the district court for Pine county to recover $9,500 damages for the nonperformance of a contract. The case was tried before Crosby, J., and a jury which rendered a verdict in behalf of defendants. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Gjertsen & Lund,* for appellant.

*J. N. Searles,* for respondents.

JAGGARD, J.

Plaintiff and appellant brought this action to recover $9,500 as damages for refusal by defendants and respondents to perform a certain contract. The jury found a general verdict for the defendants, and in answer to a special question also found that Exhibit A, upon which plaintiff relied as being the contract for the breach of which he sued, was not signed and delivered by the parties as the full and complete contract between them. The appeal was taken from the trial court's order denying plaintiff's motion for a new trial.

The record shows that the contracting parties met in negotiations which resulted in an oral agreement. A writing was then drawn and signed by both parties. The defendants insist that this was a mere memorandum of the oral agreement, in accordance with which a formal contract was subsequently to be prepared in triplicate. The

[1] Reported in 112 N. W. 1053.

plaintiff insists that it was the executed contract of the parties. As a matter of fact the writing contained all the formal essentials of a contract. A letterpress copy was then taken of it and retained by the defendants. Plaintiff kept the original. The contract was for the sale of "the 1905 season cut of white pine lumber." The part of the contract involved in this controversy guarantied that said lumber should not contain over fifteen per cent. of tamarack, balsam, and spruce. The defendants maintain that the actual oral agreement was that not fifteen, but fifty, per cent. of tamarack, balsam, and spruce were permitted by the contract. The plaintiff contends that this suggestion was an afterthought, occasioned by the rise in the market price of white pine. The substance of defendants' argument is that the contract sued on was never delivered. Their own statement of facts contradicts this. They intended to and did deliver the written memorandum. There was no fraud or mistake, or suggestion of either, in the act of the defendants in retaining the letterpress copy, nor in the act of plaintiff in taking away and keeping the original agreement. The real gist of defendants' case is that the parties never intended to execute the contract which they signed and which is here sued on. Their objection is, properly speaking, not to the delivery of the instrument the parties signed, but to what it contained. This contention is based on testimony that it was read, after having been written by the plaintiff, but not by the defendants, although they had opportunity to read it. It will, for present purposes, be conceded that under such circumstances the defendants might, by taking proper steps, have prevented the enforcement of the instrument as actually written and signed, unless they were precluded by their subsequent conduct.

Defendants are met at the threshold of their defense by the rule forbidding the alteration of a written contract by parol evidence. If that be waived, they are then confronted by the fact that the pleadings, the course of trial, and the charge to the jury were all upon the theory that the action was at law purely, and that defendants neither sought nor prayed for any equitable relief by way of reformation of the contract, or its rescission or otherwise. Defendants, moreover, expressly disclaim any actual fraud on plaintiff's part. If such considerations be waived—and a part of the court experience great difficulty in so doing—and the defendants be allowed to treat their defense as equi-

table, and as amounting only to a showing that plaintiff is not entitled to a recovery, then defendants have their own subsequent conduct with respect to the writing to explain. That writing was signed on June 8, 1905. Defendants admit that on June 15 they read the letterpress copy of the contract in their possession, and that they then knew of its terms as to the controverted provision. On that day they shipped some fifty eight thousand feet of lumber to the Stillwater Manufacturing Company in accordance with plaintiff's order. That day they wrote to plaintiff in part as follows:

> I do remember saying here that about fifteen per cent. of my cut was tamarack, but did not think that that applied to the lumber we sold to you, and did not think that you so understood it. The percentage of tamarack in the whole cut is about fifteen per cent., but it will be much stronger in the part we are sawing out. In case that this is going to make any difference, we want it understood now that fifty per cent. of our lumber can be tamarack, balsam, spruce, and Norway, and black jack, although black jack and Norway is very scarce.

On June 16 defendants wrote plaintiff, acknowledging the receipt of the order for four cars, and promised "to get it out as soon as possible," and referred to the shipments to Stillwater Manufacturing Company. On June 17 defendants sent plaintiff a stock list, and plaintiff wrote defendants refusing to modify the contract. On June 22 defendants wrote plaintiff as follows:

> "Replying to your favor of the 17th in regard to the tamarack, we shall, if it is the way you understood the agreement, pile it separately; that is, all over fifteen per cent., which shall be mixed in the stock you bought. Is it your understanding that you shall sell this extra tamarack, or shall we take steps to do so ourselves?" And:
>
> "We hereby notify you that we cannot fill any orders you have sent us, or any you may send us, unless you send orders to correspond with our stock. Please send us the regulation contract which you promised to send us, when we will correct it to correspond with our meaning of the agreement."

On July 1 defendants wrote plaintiff: "Inclosed please find stock list to date. Our lumber has run much to tamarack lately, and we have picked it out. * * * We will start shipping to you right after the 4th."

Plaintiff continued sending in shipping orders up to July 11, and in writing letters directing shipments to be made, which were received and retained by the defendants; but no other lumber was shipped out upon plaintiff's orders, except the fifty eight thousand feet which was shipped on June 15. On July 15 defendants wrote to plaintiff, and for the first time clearly claimed the fraud or mistake here relied on, and refused to proceed with the performance of the contract. On receipt of this, the defendants returned all plaintiff's unfilled shipping orders, and formally repudiated the contract.

It appears from this statement of a part, and also from other parts, of the testimony, that after defendants admittedly had knowledge of the contents of the writing which they had previously signed, they shipped goods, received shipping orders, sent stock lists, and promised performance of the contract, and failed to repudiate its terms. Under these circumstances, we think that the plaintiff was entitled to a new trial.

Order reversed and a new trial granted.