HAROLD C. STEVENS v. MINNEAPOLIS FIRE DEPARTMENT RELIEF ASSOCIATION.[1]

February 9, 1945.

No. 33,898.

[1]Reported in 17 N. W. (2d) 642.

*Arthur LeSueur* and *Joseph Cleary,* for appellant.
*M. J. Timmons,* for respondent.

PETERSON, JUSTICE.

This action was brought to recover the difference between the amount of pension payments received by plaintiff and that to which he claims he was entitled. The present action is a sequel to a prior one between the parties in which plaintiff recovered a judgment, which we affirmed in Stevens v. Minneapolis F. D. Relief Assn. 124 Minn. 381, 145 N. W. 35, 50 L.R.A.(N.S.) 1018.

Defendant is a corporation organized for the relief of its disabled members and their families in case of death. (Minneapolis has a population of over 50,000). Under Minn. St. 1941, § 69.41 (Mason St. 1940 Supp. § 3750-17), defendant is authorized to pay pensions to its members in such amount and in such manner as its

articles of incorporation and by-laws shall designate. These articles and by-laws provide for (1) *service* pensions, and (2) *disability* pensions. The *service* pension is in the nature of a retirement pension payable to firemen who have reached the age of 50 years and rendered 20 years or more of active service. The *disability* pension is payable for sickness or accident disabling a fireman from "performing his assignment of duties on the fire department."

Pursuant to its statutory powers and the provisions of its articles of incorporation, defendant established three classes of *disability* benefits, namely (1) *First class,* which includes firemen whose disability is such that they cannot perform *any* manual labor or office work; (2) *second class,* which includes those which are capable of light manual labor or office work; and (3) *third class,* which includes those who are capable of manual labor. The basic pensions provided were: For the first class, $40; second class, $25; and third class, $15, per month, respectively, which later were increased to $75, $50, and $25 for the respective classes. Defendant's affairs are managed by a board of trustees.

Plaintiff claims that from February 1, 1902, until the year 1922 he was a second-class pensioner; that in 1907 he was wrongfully dropped from the pension rolls; that in 1914, as a result of the prior litigation, his rights as a second-class pensioner were restored to him; that in 1914, pursuant to a settlement, he was paid all money due him; that from 1914 to 1922 he was paid the amount due for a third-class pension; that in 1922 he automatically became entitled to a first-class pension by reason of the fact that he had become 50 years of age; that he demanded that defendant place him on its rolls as a first-class pensioner; that it refused to do so; that again in 1936 and 1942 he made similar applications to be placed on the rolls as a first-class pensioner; that in each instance the application was denied; that defendant continued to pay him the amount of a third-class pension; that he is entitled to recover for the period from 1914 to 1922 the difference between the amount of a second-class pension and that of a third-class pen-

sion, actually paid him; and that he is entitled to recover for the period from 1922 until July 21, 1943, the date of the commencement of this action, the difference between the first-class pension to which he was entitled and the amount of the third-class pension actually paid to him.

Defendant interposed numerous defenses. It admitted that it refused to place plaintiff on its rolls as a first-class pensioner. It alleged that plaintiff, during all the times mentioned, was a third-class pensioner by reason of the fact that it was so determined by the judgment in the prior litigation and that it was so agreed between the parties at the time of the settlement in 1914. It also set up the six-year statute of limitations as a bar.

For purposes of clarity, the evidence will be stated in connection with the issues to which it is pertinent.

Findings were made that on May 13, 1903, plaintiff was granted a pension as a pensioner of the third class; that "after a hearing on the merits the District Court [in the prior litigation] ordered plaintiff returned to the pension rolls of defendant as a pensioner of the third class"; that all pensions due plaintiff have been paid; that defendant is not indebted to him in any sum; and that any causes of action that plaintiff might have by reason of the demands in 1922 and 1936 for a greater pension were barred by the statute of limitations and laches.

■ The judgment in the prior action was not proved, as it should have been, by the record or an authenticated copy thereof. Williams v. McGrade, 13 Minn. 39 (46); Todd v. Johnson, 50 Minn. 310, 52 N. W. 864. Resort was had to oral testimony. Plaintiff testified that originally he was placed on the pension rolls as a second-class pensioner; that without notice or hearing he was first reduced from second class to third class and then was stricken from the pension rolls; and that the judgment in the prior action restored him to the pension rolls with the status of a second-class pensioner. Defendant's evidence consisted of testimony by its secretary that originally plaintiff, pending determination of the class to which he belonged, was paid a second-class pension; that he was

placed on its rolls as a third-class pensioner; that the judgment in the former action restored to him his former status as a third-class pensioner; that in 1914 a settlement was made with him by paying him a third-class pension for the time he was off its rolls; and that from 1914 to the date of commencement of this action he was on the rolls as a third-class pensioner and paid a pension as such. At a hearing before defendant's trustees in 1942, plaintiff stated that the judgment "restored" him as a third-class pensioner, subject to such action as the board of trustees might take later. On this evidence, the trial judge found that plaintiff was restored by the judgment to the pension rolls as a third-class pensioner.

Where, as here, the evidence is in conflict, a finding of fact by the trial court will be sustained if it has reasonable support in the evidence. Rebne v. Rebne, 216 Minn. 379, 13 N. W. (2d) 18. The evidence here reasonably sustains the finding. Plaintiff's statement before defendant's trustees that the judgment restored him as a third-class pensioner was an admission that the judgment determined that he was a third-class pensioner. The admission was substantive evidence of the fact admitted. Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728. It gave weight to defendant's claim concerning the provisions of the judgment. True, the parol evidence as to the contents of the judgment did not satisfy the best-evidence rule. Upon objection, the evidence should and undoubtedly would have been ruled out.

The best-evidence rule goes only to the competency of evidence; not to its relevancy, materiality, or weight. Objections to competency may be removed. State v. Johnson, 12 Minn. 378 (476), 93 Am. D. 241. Parties may waive the rules of evidence. 1 Wigmore, Evidence (3 ed.) § 18. Objections to competency are removed by waiving the right to have evidence excluded, as the parties did here, by failing to object to its admission. Where incompetent evidence is received without objection, it is entitled to its full and natural probative effect. As said in Goodall v. Norton, 88 Minn. 1, 3, 92 N. W. 445, 446: "* * * a fact may be established by secondary or incompetent evidence if material, when it is received

without objection." Numerous cases to the same effect are collected in the notes to 2 Dunnell, Dig. & Supp. § 3268. Where objections to competency are removed, parol evidence is admissible to prove the contents of a judgment the same as any other writing. State ex rel. Rees v. Goldstein & Smiloweitz, 135 Minn. 465, 160 N. W. 783 (judgment of conviction). The rule is applied in cases where a judgment has been lost or destroyed. Smith v. Valentine, 19 Minn. 393 (452) ; 2 Freeman, Judgments (5 ed.) § 1029, note 17. The character of the parol evidence is no different, whether the objection to its admissibility is removed by failure to object or by loss or destruction of the best evidence.

■ Plaintiff contends, notwithstanding the finding that he was restored by the former judgment to defendant's pension rolls as a third-class pensioner, that the judgment in the record on the appeal in the prior case conclusively determined that he was a second-class pensioner and ordered him returned to defendant's pension rolls as such. In support of the contention he quoted a portion of a finding to the effect that on February 28, 1902, he was placed on the pension rolls as a second-class pensioner; that on May 13, 1903, defendant without notice or hearing reduced him to the third class; and that on May 27, 1907, he was dropped from the rolls altogether. If the record on the appeal in the prior case was evidence of the fact claimed, it should have been introduced in evidence in the instant case. Otherwise it was, as we said in Taylor v. Northern States Power Co. 196 Minn. 22, 24, 264 N. W. 139, 140, "extraneous matter." There is a limited, and as yet undefined, class of cases, however, where the appellate court may in its discretion examine such a record, if there is no dispute as to its contents and the matter might be decisive. See, 9 Wigmore, Evidence (3 ed.) § 2579. We have performed the nonobligatory task, and find that the record on the prior appeal does not support plaintiff's contention. The record does not contain the judgment. The finding of fact is not *res judicata*. A finding of fact is not an adjudication; it is the judgment which is the adjudication. Mitchell v. Bazille, 216 Minn. 368, 13 N. W. (2d) 20. A finding in a prior

action is not even admissible in a subsequent one between the parties as evidence of the fact found. State v. Brooks-Scanlon Lbr. Co. 137 Minn. 71, 162 N. W. 1054. The finding in question is entirely irrelevant here and affords no basis for plaintiff's argument that he was wrongfully reduced from a second- to a third-class pensioner. Furthermore, the findings of fact and conclusions of law in the prior case not only afford no basis for plaintiff's contention here, but affirmatively lend support, if considered at all, to the view that the court in the prior litigation intended to determine that plaintiff was entitled only to the status of a third-class pensioner. Of course, clear and explicit findings are not subject to construction and cannot be explained or impeached by other parts of the record. Kleidon v. Glascock, 215 Minn. 417, 10 N. W. (2d) 394. Where, however, the findings are of ambiguous or doubtful meaning, they should be construed in the light of the entire record, including the evidence, to ascertain the intention of the trial court. Standard Salt & Cement Co. v. Commercial Cas. Ins. Co. 171 Minn. 39, 213 N. W. 543; Fenske v. Nelson, 74 Minn. 1, 76 N. W. 785; 6 Dunnell, Dig. & Supp. § 9860. The court found that there were three classes of pensioners; that first-class pensioners were entitled to $40 per month, second-class to $25, and third-class to $15; and that plaintiff was entitled to $15 per month. As a conclusion of law, it ordered judgment in his favor for the sum of $15 per month from the date he was dropped from defendant's pension rolls to that of the entry of judgment. While the conclusion is not so stated in express terms, the court in effect held that plaintiff was a third-class pensioner. If there can be any doubt as to the meaning of the decision, it is resolved by the following colloquy between the court and counsel at the conclusion of the testimony when the court indicated to counsel what its findings should be:

"The Court: Then, there will be nothing to deduct, and then he is entitled to Fifteen Dollars ($15.00) a month from the time he was dropped from the rolls, down to the commencement of this

case. That will be the order of the Court and you may draw the findings.

*"Mr. McHale: That he shall be a third-class pensioner from the time that he was dropped in 1907?*

*"The Court: Yes, sir."* (Italics supplied.)

So far as can be ascertained from the record in the prior litigation it was the intention to award plaintiff a judgment as a *third-class* pensioner.

■ Plaintiff also urges that he was entitled to reclassification as a first-class pensioner, for which he made three separate demands. In 1922 and 1936, demands were made upon the ground that he had attained the age of 50 years. In 1942, demand was made upon the ground mentioned and the additional one that he was then totally disabled. The demands for reclassification made in 1922 and 1936 were not made upon any ground entitling plaintiff to reclassification as a first-class pensioner. The governing statutes (R. L. 1905, § 1655; G. S. 1913, § 3347; Mason St. 1927, § 3728; Minn. St. 1941, § 69.06 [Mason St. 1940 Supp. § 3728]), provide for a service pension for firemen who have attained the age of 50 years *and* done 20 years of active duty as firemen. Defendant's articles and by-laws provide that when a member has completed 20 years or more of service on the fire department, he shall, after he has arrived at the age of 50 years or more, be entitled to such a pension. The legal effect of the statute and of the articles and by-laws is the same. The word "and" in the statute is a conjunctive and denotes that both conditions must concur in order to give rise to the right. Plaintiff comes within the condition as to age, because he is over 50 years old, but he does not come within the one as to duration of active duty, because he served less than seven years as a fireman. He was not entitled to become a first-class pensioner automatically merely because he had attained the age of 50 years.

Nor was plaintiff entitled in 1942 to a reclassification from third to first class upon the additional ground that he had become totally disabled. Plaintiff claims that his demand was for reclassification

from second to first class. He asserts that originally he should have been and was classified as a second-class pensioner. Defendant claims that the demand was for a reclassification from third to first class. Plaintiff retired because he had rheumatism, which disabled him from performing the duties of a fireman. He testified that his condition became worse after his retirement. His medical testimony showed, in addition to old age, that he was suffering from prostatitis, arthritis, and other ailments, with all of which he became afflicted after his retirement, except an old back injury dating back to 1898, which was not a factor in producing his retirement disability. Both second and third class are based upon partial disability; first class upon total disability. Hence, it makes no difference for present purposes to which class plaintiff originally properly belonged, because his claim for reclassification to first class, whether it be from second or third class, is based not upon his original disability, but upon increased disability occurring subsequent to his retirement as a fireman.

By the terms of the applicable statutes (Minn. St. 1941, § 69.43 [Mason St. 1940 Supp. § 3750-19]; Mason St. 1927, § 3749), plaintiff, upon becoming disabled from performing his assignment of duties on the fire department, became entitled to such relief as defendant's by-laws might provide. Defendant's articles and by-laws provide that a fireman disabled from performing his assignment of duties on the fire department shall be entitled to receive a pension as therein provided, "from the time of his retirement from the fire department * * * during such disability." Provision is made for classifying pensioners according to the degree of disability at the time of their retirement. It is plain, therefore, that a pension is granted only for disability which came into existence while the pensioner was a fireman and not afterward—only a fireman in fact can be disabled from performing the duties of a fireman on the fire department. It is true that defendant's articles and by-laws contain provisions for the reclassification of pensioners and their transfer from one class to another "as the disability is increased or diminished, or drop the pensioner from

the pension roll if the disability is entirely removed." *The disability* referred to is the one for which the pension was granted in the first instance; one payable only *from the time of retirement* and *during such disability.* The reclassification relates to such disability. The purpose is to provide for taking into account the consequences of retirement disability not fully understood or foreseen at the time, either by changing the classification so as to increase or decrease the pension, if those consequences are an increased or decreased disability of a class different from the original classification, or by discontinuing the pension altogether, if the consequence is that the original disability has been entirely removed. The purpose was not to make it mandatory upon defendant to allow pensions for disabilities occurring subsequent to a fireman's severance from the fire department.

We have not overlooked the fact that plaintiff claimed that he was entitled under an "ordinance" to be automatically classified as a first-class pensioner upon attaining 50 years of age. But it appears from plaintiff's testimony, as a whole and from his application made in 1936, that what he meant by "ordinance" was a provision of defendant's by-laws.

█ The evidence shows that from the time of the settlement in 1914 to the time of the commencement of this action, defendant issued, tendered, and delivered to plaintiff each month a pension check for the amount due a third-class pensioner, reciting that it was in full payment for the amount due plaintiff for the month, and that such checks were accepted and cashed by plaintiff regularly. The checks were in such form that, when endorsed, they constituted receipts in full for the pension due him each month. Since plaintiff was entitled to only a third-class pension, he was paid in full. If it were otherwise, it would make no difference. Defendant's tender to plaintiff each month of a check in full payment of the pension due him for the month and plaintiff's acceptance and cashing of the checks with an endorsement showing receipt of the proceeds of the check as such payment constituted an accord and satisfaction of all plaintiff's claims for pension and a

discharge of defendant from such claims. Oien v. St. Paul City Ry. Co. 198 Minn. 363, 270 N. W. 1.

■ Plaintiff objected to the admission in evidence of the resolution of May 13, 1903, placing him on the pension rolls as a third-class pensioner, but took no exception to the ruling overruling his objection. There was no motion for a new trial. Where no exception is taken to a ruling excluding evidence and no motion for a new trial is made, the ruling is not reviewable on an appeal from the judgment. Papke v. Pearson, 203 Minn. 130, 280 N. W. 183; Cincinnati Time Recorder Co. v. Loe, 152 Minn. 374, 188 N. W. 1011.

We have not reached or considered the question whether the statute of limitations has barred the action so far as it is based upon demands for reclassification in 1922 and 1936. Our cases hold that such claims are barred. Lund v. Minneapolis F. D. Relief Assn. 137 Minn. 395, 163 N. W. 742; Davis v. Minneapolis F. D. Relief Assn. 137 Minn. 397, 163 N. W. 743. Since the judgment must be affirmed upon the other grounds discussed, it is unnecessary to consider the question.

Our conclusion is that plaintiff has not shown any reversible error and that the judgment appealed from should be affirmed.

Affirmed.