Monnah Park Block Company v. Commissioner.
Monnah Park Block Co. v. Commissioner
Docket No. 3263.
United States Tax Court
1945 Tax Ct. Memo LEXIS 226; 4 T.C.M. (CCH) 415; T.C.M. (RIA) 45140; April 20, 1945
*226 The petitioner rented five trucks at $75 each per month, from the owners of 49 out of 50 of its outstanding shares of stock, and also rented from them the real estate on which it was located at $100 per month, the use of both the trucks and real estate being ordinary and necessary in carrying on its business: Held, the truck rental was reasonable in amount and deductible in full from gross income. Held, further, that the real estate rental was not shown to be reasonable in an amount in excess of the deduction allowed by respondent. D. D. Felix, Esq., Congress Bldg., Miami, Fla., for the petitioner. Arthur H. Fast. Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion Respondent determined deficiencies in petitioner's income tax, declared value excess-profits *227 tax, and excess-profits tax for the calendar year 1940 as follows: Income tax
$ 405.82
Declared value excess-profits tax
326.50
Excess-profits tax
457.15
Total Deficiency
$1,189.47
The deficiency results in part from respondent's determination "that the amounts of $400.00 and $2,256.00 represent fair and reasonable rent paid to your stockholders for the use of real estate and automobile trucks, respectively. Accordingly, $200.00 of the amount claimed as rent of real estate and $1,981.50 of the amount claimed as rent of automobile trucks have been disallowed as deductions * * *." Other adjustments are not in controversy. Findings of Fact Petitioner is a corporation, duly organized and existing under the laws of the State of Florida, with its principal office at 2205 N.W. 41st Street, Miami, Florida. It is engaged in the business of manufacturing concrete blocks, and has been so engaged since 1924. It filed its Federal income and excess-profits tax returns with the collector for the district of Florida. During the taxable year, petitioner had fifty shares of capital stock outstanding, owned as follows: L. F. Hinds
24 1/2 shares
Estate of T. A. Eden
24 1/2 shares
Frank J. Murphy
1 share
*228 L. F. Hinds was president of petitioner and had occupied that position for about ten years. He was paid a salary of $6,000 in 1940. During 1940 and prior thereto he owned four trucks of the type and cost as below listed: Type
Cost
1937 Chevrolet 1 1/2 ton pick-up truck
$597.50
1934 Ford V-8 flat body truck
819.00
1935 Ford V-8 1 1/2 ton flat body truck
828.50
1936 Chevrolet 1 1/2 ton flat body truck
918.00
During 1940 the Estate of T. A. Eden owned one truck, make and model and cost unspecified. During the taxable year 1940 petitioner rented these five trucks for the purpose of hauling concrete blocks, cement and building material, and also for transporting labor. Petitioner paid a rental of $75 per month per truck, and paid for the driver, gas, oil, repairs, and liability insurance. There was no written agreement covering the truck rental, but a resolution covering the terms was entered in the corporate minute book. Petitioner rented no trucks from anyone else. At the beginning of the taxable year 1940 petitioner owned two trucks, and bought a third in September 1940. Petitioner in prior years paid a rental of $40 for each of the rented trucks per month, *229 which was later increased to $60 and finally to $75. The increases were made as the volume of business increased, and the trucks were worked more hours each week. The trucks had been purchased by L. F. Hinds and T. A. Eden because at that time their credit was better than that of petitioner. The trucks were in use about nine hours daily for 25 to 26 days each month during 1940. Trucks of the type involved could deliver from about 1,350 to 1,500 cement blocks daily. The prevailing rate charged in 1940 for hauling cement blocks was one cent a block. The prevailing wage paid truck drivers was 40" per hour. One of petitioner's competitors who prior to 1940 owned and operated his own trucks to haul cement blocks hired others to haul blocks in 1940 at 1" per cement block because he found it cheaper to rent than to own and operate his own trucks. L. F. Hinds and the Estate of T. A. Eden during the first half of 1940 were equal owners of the land upon which petitioner's plant was located. The tract was about 150 feet square and located at the corner of 41st Street and 22nd Avenue in the City of Miami, Florida. Petitioner paid the owners rental of $100 per month for six months in 1940. *230 In the middle of the year the property was purchased by petitioner for $1,248. Petitioner reported in its income tax return for the calendar year 1940 gross income of $46,300.39 and net income of $10,596.28. It neither reported nor paid any dividends in that year. It also reported an "earned surplus and undivided profits" at the end of the taxable year of $5,518.29 and at the beginning of the taxable year of minus $3,665.71. Among other deductions claimed by petitioner in its return for 1940 were the following: Gasoline and oil
$3,410.82
Auto and truck expense
2,129.52
Auto and license tags
307.53
As to the five trucks rented by petitioner from its two shareholders, it claimed in its return a deduction for the taxable year of $4,237.50, based on a rental of $75 per truck per month. This covered only the use of the trucks, as petitioner supplied the drivers, gasoline, oil, up-keep, and liability insurance. Respondent allowed $2,256 of the amount claimed, basing his allowance on a rental of $40 per month per truck. Petitioner claimed in its return a deduction of $600 for the taxable year as rental for six months (on the basis of $100 per month) paid on the *231 real estate involved. Respondent allowed $400 of the amount on a basis of $66.66 2/3 per month for six months. The fair and reasonable rate of rent for the five trucks rented by petitioner in the taxable year was $75 per truck per month. Opinion TYSON, Judge: The issues herein arise under section 23(a) of the Internal Revenue Code, [1] but as treated by both parties on brief, do not involve and question as to whether or not the renting of the trucks and real estate by petitioner was ordinary and necessary in the carrying on of its trade or business. They involve only the question of whether or not the amounts claimed in its returns by petitioner as rentals paid, or any part thereof, were so excessive as to be neither reasonable nor necessary beyond the amounts allowed by respondent. Involved in this question is a subsidiary question of whether the excess of the claimed amounts above those allowed by respondent, or any part thereof, represented the distribution of profits by petitioner to its shareholders, respondent contending that it did and petitioner that it did not. Petitioner concedes on brief that if any part of the alleged rentals was unreasonable *232 and excessive that such part was not deductible business expense and that if such part was a distribution of profits to petitioner's shareholders it would also not be deductible. Petitioner, according to its tax return, spent $5,847.87 for gas, oil, and up-keep of the seven trucks operated in 1940, two of such trucks being owned by it and five being rented by it. This makes an average monthly operating expense for the seven trucks of $69.62 exclusive of drivers. *233 The drivers at 40" an hour for an average of nine hours daily, 25 days per month, during which the trucks were operated, cost $90 per month. The average monthly operating expense added to the $90 per month expense for drivers and to the $75 per month rental, made the total expense to petitioner of operating each rented truck approximately $235 per month. The evidence shows that each truck could haul an average of 1,350 blocks daily. The usual charge by the owners of trucks for hauling such blocks in the territory in which petitioner operated was one cent each. On this basis, if petitioner had employed others to haul its blocks it would have cost $13.50 daily, or $337 per month of 25 work days, for each truck used. A competitor of petitioner who had formerly owned and operated his own trucks found it cheaper to hire his hauling done during 1940 at one cent a block, which would have amounted to $337 per month as applied to petitioner's needs. Under the circumstances, petitioner's total cost per rented truck per month of $235, which includes the $75 rental, when contrasted with the alternative rental arrangement which might have been made at $337 per month, does not appear unreasonable *234 or excessive. Respondent's view that a part of the $75 per month paid by petitioner for the use of each of the five trucks represented a distribution of profits by petitioner to its two shareholders overlooks the circumstance that while the two shareholders who owned the trucks each owned an equal number of shares of stock, they owned and rented an unequal number of trucks, four in the case of one shareholder and one in the case of the other shareholder. If any part of the rental payments represented a distribution of profits, the amounts received as such by the truck owners, would be in vast disproportion to their respective shareholding interests. That an owner of equal shares would countenance such inequitable distribution is not credible, and we are of the opinion that no part of the amounts paid by petitioner for the use of the five trucks represented a distribution by petitioner of profits to its two shareholders. We hold that petitioner is entitled to the deduction claimed for rental paid by it for the trucks. With regard to the deduction claimed by petitioner for rental of the land involved, our view is different. There is no satisfactory evidence to support such rental. *235 While the evidence shows there were buildings on the land occupied by petitioner, the president of petitioner, one of the co-owners of the land and the only witness testifying as to ownership, did not know who owned the buildings or whether the rental of $100 per month included rent for the land and buildings or for the land alone. We consequently have no information as to what the petitioner obtained for the rental paid. A realtor, testifying to the effect that a reasonable rental for the property was $100 per month, considered as a factor a fair market value he placed of $5,000 or $6,000 on the property with reference to which he testified. Obviously this witness greatly overrated the fair market value of the property shown to be owned by the two shareholders, since in the tax year such property for which the rental claimed as a deduction was paid sold to petitioner for $1,248. In these circumstances, we cannot rely upon the testimony of the realtor as establishing that $100 per month was a reasonable rental for the properuy purchased by the petitioner from its two shareholders. Respondent has allowed a deduction of $400 for six months rental on the property rented by petitioner *236 from its shareholders which is at the rate of $66.67 monthly, and we can not say that he erred in doing so. We consequently sustain his determination. It may be noted that the excess above that amount may have constituted distribution of profits by petitioner, as contended by respondent, since it is credible that in this matter neither of the two shareholders, both being owners of equal interests in the real estate, would likely have had the motive to discountenance such distribution as would in all probability have been true with regard to the amount of rental paid for the trucks. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩