## CLARENCE LUNDEEN v. COZY CAB MANUFACTURING COMPANY.

179 N. W. (2d) 73.

July 24, 1970—No. 42090.

*Olson, Nelson & Nagel* and *Wendell Nelson,* for appellant.

*Nelson & Doering, Johnson, Schmidt, Thompson, Schneider & Lindstrom,* and *John C. Lindstrom,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying defendant a new trial in this action to recover commissions.

Plaintiff, Clarence Lundeen, began work in May 1963 as a salesman for defendant, Cozy Cab Manufacturing Company, a supplier of cabs for farm tractors. Plaintiff initially was paid $50 for each cab he personally sold. In November 1964 plaintiff and LaVon Grotto, president of Cozy Cab, entered into a written contract which provided that plaintiff was to be paid $25 for each cab sold to his established dealers if plaintiff had called on the dealer during the 90 days preceding the sale.

Plaintiff was paid according to this contract from November 9, 1964, to December 31, 1964. Plaintiff and defendant agree that he was paid $2,194 for this period and that this was an overpayment of $794.

Plaintiff claims that the contract was orally modified in January 1965 to the extent that plaintiff no longer had to call on the dealers within any time period prior to a sale to receive a commission. Thus, plaintiff would receive a commission on all cabs sold to his established dealers. Defendant denies that the contract was modified and claims the 90-day call requirement was still in effect. During 1965 plaintiff was paid $25,788. Plaintiff contends that he was entitled to an additional $5,337, or a total of $31,125. Defendant maintains that plaintiff earned only $17,525 and was thus overpaid $8,263. The trial court found for plaintiff, awarding him the additional $5,337 for commissions earned in 1965.

Plaintiff and defendant agree that in 1966 the contract was amended so that plaintiff was entitled to a commission if he had called on the dealer within 120 days prior to the sale. Both plaintiff and defendant agree that plaintiff was paid $32,739 during the first 9 months of 1966, which was an overpayment of $4,589.

On October 3, 1966, plaintiff was discharged. Plaintiff claims that he is entitled to a commission on every cab sold thereafter if he had made a call on the dealer within 120 days of the sale. The trial court agreed and awarded him $13,575 in commissions at the rate of $25 per cab for 543 cabs sold after he was discharged.

The trial court thus found that plaintiff was entitled to a total of $18,912, less $5,383 (the overpayment of $4,589 in 1966 and an overpayment of $794 in 1964), and awarded him $13,529. The only disputed periods are the two periods of underpayment of $5,337 and $13,575.

■ The issue with regard to the 1965 dispute is whether the evidence supports the trial court's findings that the contract was orally modified so as to remove the 90-day requirement. Plaintiff testified that defendant so agreed. Defendant denied any such agreement.

In 1965 defendant paid plaintiff $8,263 more than he would be entitled to if the 90-day requirement were still in effect but $5,337 less than he was entitled to if there was no 90-day requirement. In 1965 there were no deductions on plaintiff's pay slips for sales to dealers who had not been called on within 90 days. On the other hand, beginning in May 1966, there were deductions for sales to dealers who had not been called on within 120 days.

There is thus a conflict in the testimony as to whether there was a modification of the contract in 1965. Modification is supported (a) by plaintiff's testimony of the modification, (b) by defendant's overpayment of $8,263 in 1965, and (c) by the lack of 90-day deductions in 1965, as contrasted with deductions made in 1966. This is sufficient evidence to affirm the trial court's finding of a modification. This case is unlike Fischer v. Steelock of Minnesota, Inc. 283 Minn. 354, 168 N. W. (2d) 10, where we held there was not sufficient evidence to support a modification of an employment contract when the only evidence was the employees' assertions. In Fischer the employees continued to be paid at the old rate, which was not the case here.

■ We then come to plaintiff's termination rights. The contract in question had no termination date and was therefore terminable at will by either party. Cederstrand v. Lutheran Brotherhood, 263 Minn. 520, 532, 117 N. W. (2d) 213, 221. Defendant had the right to discharge plaintiff on October 3, 1966,

and plaintiff has no right to severance pay since the contract did not provide for it. However, plaintiff is entitled to be paid for the work he did prior to his discharge. Under the contract he is entitled to commissions on all sales made to established dealers if he visited the dealer within 120 days prior to date of sale. The contract does not require that plaintiff do anything else to earn his commission. The trial court was correct in finding that plaintiff was entitled to commissions on sales made within 120 days after he was fired. This is the nature of commission payments: One is not paid until the sale is made. Plaintiff is entitled to compensation for the calls he made before his discharge which resulted in sales within 120 days after his discharge (which the trial court determined to be 543 cabs at $25 per cab). Otherwise, defendant would have received the value of plaintiff's calls without fully compensating him for his work.

■ When LaVon Grotto, defendant's president, fired plaintiff, Grotto gave him a check for $3,940.22. Defendant argues that the offering of this check and plaintiff's acceptance constitute an accord and satisfaction. This check covered commissions for cabs sold prior to October 3, 1966, and credit for accounts receivable which had previously been deducted from plaintiff's salary. When Grotto gave plaintiff the check, he said, "Clarence, you're all done. Pick up your check, and pick up your trailer, and go home." Plaintiff took the check and cashed it.

An accord and satisfaction would have been established if Grotto had made it clear that he intended the check to be full payment for plaintiff's services and that he recognized that plaintiff might dispute the amount. See, 6 Corbin, Contracts, § 1277. In such a case plaintiff's cashing of the check would have been acceptance of the offer and thus there would be an accord and satisfaction. Putnam v. Gordon Jensen, Inc. 272 Minn. 532, 139 N. W. (2d) 266; 6 Corbin, Contracts, § 1279.

The evidence does not compel the conclusion that the check was intended to be full payment. Consequently, it was proper for the trial court to find that defendant's president did not make his

intention clear and to conclude that there was no accord and satisfaction.[1]

Defendant also argues that the plaintiff's retention of his weekly salary checks operates as an accord and satisfaction for the pay period of each check. However, there is nothing to indicate that these were offered in full payment. In fact, they were issued subject to adjustment for 30/60-day accounts receivable. Also, during 1965 and part of 1966 there was no dispute and the checks were not offered as payment of a lesser amount than defendant owed plaintiff. Thus, there could be no accord and satisfaction. 6 Corbin, Contracts, § 1278.

Affirmed.

MR. JUSTICE KELLY, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] In that connection the trial judge stated in his memorandum: "* * * There is nothing on the check dated October 3, 1966 for $3,940.22 given by the defendant to the plaintiff indicating that it was a settlement in full. Neither is there anything on Exhibit B, which showed the manner in which the amount of the check was computed, to indicate that it was a settlement in full. There is nothing in the conversation between the plaintiff and LaVon Grotto which indicates that there was any agreement that the check of $3,940.22 was in full settlement of all accounts between plaintiff and defendant."