**Cleo Beatrice BAXTER and Albert N. Baxter, Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.**

No. 86–7285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1987.

Decided May 6, 1987.

Cleo B. Baxter and Albert N. Baxter, pro se.

Laurie Snyder, Washington, D.C., for respondent-appellee.

Before KOELSCH and NOONAN, Circuit Judges, and BRYAN *, District Judge.

NOONAN, Circuit Judge:

Albert Nathaniel Baxter (Baxter) and his wife, Cleo Beatrice Baxter, appeal the decision of the Tax Court upholding the Commissioner of Internal Revenue's assessment of a deficiency in their 1978 tax re-

turn. We reverse in part and affirm in part.

### The First Issue: The Constructive Receipt of Income

Baxter received in January 1979 a check for $13,095 from Peter J. Veith. The check was for commissions earned by Baxter in 1978. The check was dated December 30, 1978. The Tax Court held that Baxter had "constructively" received the $13,095 in 1978.

Although the notion of constructive receipt blends a factual determination of what actually happened and a legal assessment of its significance, we have held that a finding of constructive receipt is a finding of fact. *Bennett v. United States*, 293 F.2d 323, 326 (9th Cir.1961). As such, it can be set aside only if clearly erroneous. *Anderson v. City of Bessemer*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). Clear error exists here.

The Tax Court properly put no weight on the fact that Veith reported the payment as a deduction in 1978 and the fact that Baxter originally reported the payment as 1978 income, only later correcting this report as mistaken. The Tax Court rested its finding on Baxter's statement at trial that he "could have" picked up the check on December 30. The Tax Court concluded, "Thus, by petitioner's own testimony, the check was available to him in 1978 if he wanted to pick it up."

Income, although not actually reduced to possession, is constructively received by a taxpayer "in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given." Reg. § 1.451–2(a). But the law has been glossed so that although money has been credited to one's account or set apart for one it is not income if some barrier exists to actual possession. Thus dividend checks prepared by a corporation

---

* Honorable Robert J. Bryan, United States District Judge for the Western District of Washing-  ton, sitting by designation.

on December 31, but not regularly available until the first business day of January, were held to be income in the taxable year beginning in January. The checks did not constitute payments "prior to their actual receipt." *Avery v. Commissioner*, 292 U.S. 210, 215, 54 S.Ct. 674, 676, 78 L.Ed. 1216 (1934).

■ In *McEuen v. Commissioner*, 196 F.2d 127, 129–130 (5th Cir.1952), it was suggested that geography does not create a barrier, but the case actually depended on the taxpayer controlling the time of payment by agreement with the payor. No such agreement was shown here. In this case, Veith lived forty miles from Baxter. December 30, 1978 was a Saturday. Baxter's testimony referred to a hypothetical situation: he could have gotten into a car and driven to Veith's and collected the check. But the day (a non-business day, Saturday), the distance (an 80 mile round trip), and the futility of such an expedition (he could not have received credit for the check at a bank before January 2) were as effective a barrier to his asserting control over the check as was the corporate routine that constituted a barrier in *Avery*. The statute itself prescribes: "However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." The Tax Court erred in not recognizing the substantial restrictions preventing Baxter's exercise of control here.

### The Second Issue: Baxter's Profit Motive

Baxter in late 1978 bought for $120,000 a wind turbine and generator from Alternative Energy Corporation of America (AECA) and leased a chemical cell to make bleach from electricity to be generated by the wind. The equipment he purchased was to be installed in Dalhart, Texas. Baxter, a resident of California, had seen a prototype. He paid $6,000 down on the turbine and undertook to pay the rest in monthly payments; the outstanding balance was secured by the equipment. He leased the cell for $5,500. On his 1978 return Baxter claimed a $9,043 deduction for the turbine, valued at $120,000; a $12,000 energy tax credit for the turbine; a $6,857 investment tax credit for the turbine and cell; and a $6,100 lease expense for the cell. The deductions and credits claimed were far in excess of his cash outlay.

The Commissioner disallowed the deductions and credits, and the Tax Court affirmed. The Tax Court found that the contract for the turbine was essentially a nonrecourse obligation, so that Baxter in effect had only his original investment of $11,500 at risk. Baxter made no further payments on the turbine or the cell. The Tax Court noted that Baxter did not check AECA's financial condition. The Tax Court disbelieved Baxter's assertion that he was interested in income for his retirement years rather than in tax benefits for 1978, in which his income was $72,000. The Tax Court concluded that Baxter did not have the primary intention to make a profit.

Baxter argues that the Tax Court finding is flawed. Contrary to what the Tax Court asserts, Baxter was "an expert in wind generation." At least he had two degrees in mechanical engineering and had spent 25 years as a professor or engineer in the field of energy. He asserts that he had enough experience to make an assessment of the risks and rewards and that he sought to make a profit. Windmills at the time were being encouraged by the government and as an energy source in the oil crisis looked like a desirable investment. Baxter took a prudent interest in the business and actually visited Dalhart in December 1979. That the venture was unsuccessful and that no bleach was produced were without his fault and contrary to his expectations.

■ Although the question of Baxter's purpose is not free from doubt, we are constrained by a triple barrier. First, the burden of proof to show that the Commissioner's determination was incorrect falls on the taxpayer. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933). Second, although the statute requires only that a transaction be "engaged in for profit," I.R.C. § 183(a), case law requires that the enterprise be entered "with the domi-

nant hope and intent of realizing a profit." *Independent Electric Supply, Inc. v. Commissioner,* 781 F.2d 724, 726 (9th Cir. 1986), quoting *Hirsch v. Commissioner,* 315 F.2d 731, 736 (9th Cir.1963). Third, the Tax Court's finding of intent cannot be reversed unless clearly erroneous. *Anderson v. City of Bessemer, supra.* We are unable to find that the Tax Court clearly erred in holding that Baxter failed to prove that his dominant hope and interest in entering on the wind energy enterprise was to make a profit. Consequently Baxter is not entitled to the deductions and credits claimed.

### The Third Issue: The Negligence Penalty

■ The Tax Court's affirmance of the Commissioner's imposition of a penalty for negligent or intentional disregard of rules and regulations is a factual finding reviewed for clear error. *Bryant v. Commissioner,* 790 F.2d 1463 (9th Cir.1986). The Tax Court upheld the penalty simply by reciting that "the facts of this case support a finding that the petitioners were negligent or intentionally disregarded the rules and regulations." We find this conclusory statement less than illuminating as a statement of fact and unsupported by substantial evidence. Baxter had a good case on constructive receipt and an arguable case on the deductions and credits. That the Commissioner ultimately prevailed on the second issue is proof neither of negligence nor intentional disregard of the Internal Revenue Code.

*Affirmed* as to the claimed credits and deductions. *Reversed* as to the constructive receipt of income and the penalty for negligence and *Remanded* with instructions to enter judgment accordingly.