42 F.3d 1400
 74 A.F.T.R.2d 94-6890
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John B. LINDSEY; Jerri J. Lindsey, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 94-70023.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 1, 1994.*
Decided Nov. 4, 1994.
 
 Before: WALLACE, Chief Judge, GOODWIN and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 John B. and Jerri J. Lindsey appeal pro se the tax court's decisions (1) upholding the Commissioner of Internal Revenue Service's ("Commissioner") determination of a federal income tax deficiency for tax year 1983, and (2) denying John Lindsey's motion for a continuance. We have jurisdiction under 26 U.S.C. Sec. 7482(a)(1), and we affirm.
 
 
 3
 * Background
 
 
 4
 In 1982, John Lindsey was hired by the University of Arizona ("University") as the head basketball coach. At the time he entered into his employment contract, the University believed that Arizona law prohibited the University from entering into multi-year employment contracts. Nevertheless, the University gave oral assurances to Lindsey that his one-year contract would be renewed for three additional years.
 
 
 5
 At the end of the 1982 basketball season, Dr. Koffler, the University's president, told Lindsey that he would not be rehired as the University's basketball coach. On August 12, 1983, the University sent Lindsey two checks totaling $49,115. The checks were accompanied by a letter from Dr. Dempsey, the University's athletic director, which stated in relevant part that the money represented "severance pay." The amount was the equivalent to Lindsey's base salary, and was given to Lindsey in addition to his salary for the 1982-83 season.
 
 
 6
 After receiving the money, Lindsey sent a letter to the University in which he stated that in accordance with a prior agreement between Dempsey, Koffler and himself, his acceptance of the "severance pay" was in no way to be construed as a settlement of his claim for damages against the University, or "a settlement of any kind." Lindsey subsequently filed suit against the University in state court and was awarded $215,00 in damages for loss of employment and an additional $91,312 in attorney's fees.
 
 
 7
 The Lindseys did not include payment of $49,000 as part of their gross income for tax year 1983, and in 1988 the Commissioner issued a notice of deficiency against them. The Lindseys filed the instant action in Tax Court asserting that the $49,000 should be excluded from their 1983 income as "damages received on account of personal injuries," under section 104(a)(2) of the Internal Revenue Code. The tax court rejected this contention and entered a decision finding the Lindseys liable for a deficiency in tax for tax year 1983 in the amount of $19,106.[1]
 
 II
 Merits
 A. Tax Deficiency
 
 8
 We review de novo the tax court's rulings of law, Vukasovich, Inc. v. Commissioner, 790 F.2d 1409, 1413 (9th Cir.1986), while reviewing for clear error the court's underlying factual findings, Baxter v. Commissioner, 816 F.2d 493, 496 (9th Cir.1987).
 
 
 9
 Section 61(a) of the Internal Revenue Code states that except as otherwise provided, "gross income means all income from whatever source derived." 26 U.S.C. Sec. 61(a). Section 61(a) is to be broadly construed, while any exclusions from income are to be narrowly construed. See Commissioner v. Jacobson, 336 U.S. 28, 49 (1949); United States v. Centennial Sav. Bank FSB, 499 U.S. 573, 583-84 (1991). A taxpayer claiming an exclusion from income therefore bears the burden of proving that his claim falls within an exclusionary provision of the Code. See Horton v. Commissioner, 33 F.3d 625, 627 (6th Cir.1994).
 
 
 10
 The exclusion relied on by the Lindseys states that gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness. 26 U.S.C. Sec. 104(a)(2). Treasury Regulation Sec. 1.104-1(c) provides that damages under section 104(a)(2) are defined as the "amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Treas Reg. Sec. 1.104-1(c).
 
 
 11
 Here, it is undisputed that John Lindsey expressly stated in his letter to the University that his acceptance of the $49,000 was not meant to constitute "a settlement of any kind." Moreover, the Lindseys subsequently initiated and prevailed in their suit against the University and were awarded damages. Accordingly, because the $49,000 received by Lindsey did not constitute a settlement in "lieu of" prosecution, the Lindseys may not claim the amount excludable under section 104(a)(2). See id.
 
 
 12
 John Lindsey nevertheless contend that there was an oral agreement between himself and the University that payment be made "in exchange for an agreement by Lindsey to drop the defamation claim he was then considering as part" of the lawsuit he subsequently brought. We agree with the tax court that there is no evidence in the record to indicate the existence of such an agreement.[2] Moreover, Lindsey's letter to the University unambiguously stated that his receipt of the $49,000 would in no way constitute a settlement of any of his claims. Given these circumstances, the tax court did not clearly err by finding the Lindseys liable for a deficiency in tax for tax year 1983. See Baxter, 816 F.2d at 496.
 
 B. Denial of Motion for a Continuance
 
 13
 The Lindseys contend that the tax court erred by denying their motion for a continuance. This contention lacks merit.
 
 
 14
 On December 4, 1989, the day the Lindseys' case was scheduled for trial, the Lindseys' attorney moved to withdraw as counsel because the Lindseys no longer desired him to represent them. The tax court granted the motion and scheduled the trial for December 12, 1989, giving the Lindseys seven additional days to prepare. The Lindseys then moved for a continuance which the tax court offered to grant if the Lindseys sought representation by another attorney. The tax court apparently denied the motion after John Lindsey indicated that he would be proceeding pro se.[3]
 
 
 15
 We review the denial of a continuance for clear abuse of discretion. United States v. Torres-Rodriguez, 930 F.2d 1375, 1383 (9th Cir.1991). The trial court "clearly abuses its discretion only if denial of the continuance was arbitrary or unreasonable." Id. A continuance may properly be denied even where the denial leaves the moving party unrepresented at trial. See United States v. Studley, 783 F.2d 934, 938-39 (9th Cir.1986); see also Arabian American Oil Co. v. Scarfone, 939 F.2d 1472, 1479 (11th Cir.1991) (no absolute right to a continuance when attorney withdraws unless moving party was free of negligence).
 
 
 16
 Although under the circumstances, the Lindseys' request for a continuance was reasonable, we cannot say that the tax court's refusal was so unreasonable and arbitrary as to amount to a clear abuse of his discretion. Torres-Rodriguez, 930 F.2d at 1383. The Lindseys displayed a lack of diligence by waiting until the day of trial to realize that they were dissatisfied with their counsel's performance. Additionally, the court, already having granted the Lindseys seven additional days to prepare, would have been further inconvenienced by having to reschedule the trial. Finally, the Lindseys fail to demonstrate that they were prejudiced by the denial. See United States v. Flynt, 756 F.2d 1352, 1358 (9th Cir.), amended on other grounds, 764 F.2d 675 (1985).
 
 
 17
 The Lindseys state that they were prejudiced because had they been given a continuance they would have been able to call Dr. Koffler as a witness. The Lindseys were given seven additional days to prepare their case, however, and they submit no evidence showing that they made any attempts to subpoena Koffler during that time. Moreover, the Lindseys were able to introduce into evidence deposition testimony of Dr. Dempsey, the athletics director who signed the letter accompanying the $49,000, as well as Koffler's testimony and cross-examination from John Lindsey's state court trial. Given these circumstances, the Lindseys failed to show that they were prevented from presenting a material part of their case as a result of the tax court's action.[4] See id.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The Tax Court also found the Lindseys not liable for any additions to tax assessed by the Commissioner
 
 
 [2]
 During trial, when the tax court asked Lindsey why he thought the University offered him the money, Lindsey responded that:
 It was given because of the personal allegations that accompanied the act and the pressure they got from the legislature to rectify that, which would then given them the appearance--really two things--give them the appearance that they didn't think Ben Lindsey was really that bad a guy, that everybody was saying, and also maybe Ben Lindsey wouldn't file a lawsuit over that issue.
 There is no other testimony in the record which would indicate that the University entered into an agreement with Lindsey to tender the $49,000 in lieu of him pursuing a defamation claim.
 
 
 [3]
 Because this exchange apparently took place in chambers there are no transcripts of the denial in the record
 
 
 [4]
 We reject the Lindseys' contention that the tax court violated their right to equal protection by offering to grant them a continuance only if they retained counsel. The Lindseys were familiar with the facts of their case and had ample notice of the trial date. A new attorney, however, would have had to become quickly familiar with the facts and history of the case. Accordingly, we find no abuse of discretion in the district court's action. See Torres-Rodriguez, 930 F.2d at 1383