**Michael A. WEED, Relator,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

No. C3–96–394.

Supreme Court of Minnesota.

July 11, 1996.

Michael A. Weed, Spring Valley, for appellant.

Thomas K. Overton, Asst. Atty. Gen., Tax Litigation Div., St. Paul, for respondent.

## OPINION

KEITH, Chief Justice.

At issue in this appeal is whether a check received by a taxpayer in 1991 and thereafter retained but not cashed by the taxpayer is includable in the taxpayer's 1991 Minnesota taxable income. The tax court concluded that the taxpayer constructively received the income in 1991 and it was therefore properly taxable in that year. We affirm.

### I.

In 1991, Relator, Michael A. Weed, left his employment at IBM in Rochester, Minnesota, where he had been employed as an engineer since 1979. Weed claims that he was unlawfully discharged from IBM, and subsequently filed suit in federal district court against IBM.[1] Although Weed alleged that he was unlawfully discharged, IBM treated Weed's resignation as a voluntary termination of employment. After Weed left its employ, IBM sent him a check in the amount of $17,884.35 bearing the memo "Separation." This separation pay was a net amount after withholding for taxes and other items. Weed received the check, but did not cash it. He testified that he refused to cash the check because doing so "might aid IBM in its illegal activities" and because he feared cashing it would jeopardize his legal position in his suit with IBM.

In January 1992, Weed received a W-2 form from IBM indicating gross wages paid to him in 1991 of $35,867. This gross wages figure included the amount in the separation check which IBM sent to Weed. In April 1992, Weed filed his federal and state tax

---

1. Specifically, Weed alleged IBM discharged and failed to rehire him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 (1988), and because of his medical disability, in violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03 (1994). He further alleged IBM terminated his employment to prevent him from obtaining sick leave and retirement and medical benefits, in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140 (1988). Weed also alleged IBM defamed him by releasing to his attorney and to the Minnesota Department of Human Rights his personnel file. Prior to trial, the United States District Court for the District of Minnesota granted IBM summary judgment on all claims except those brought under the ADEA. Following five days of testimony, the court granted IBM summary judgment on the ADEA claims.. Weed appealed to the United States Court of Appeals for the Eighth Circuit, which summarily affirmed in an unpublished decision. *Weed v. International Business Machines*, No. 95-1099, 1995 WL 437937 (8th Cir. filed July 26, 1995).

forms, attaching the W–2 form issued by IBM. He added an explanation that he believed the wages reported were incorrect because they included his separation pay, and he did not compute the separation pay as income.

The treatment of both Weed's state and federal tax returns is relevant to this appeal. Concerning Weed's state tax return, the Minnesota Department of Revenue (DOR) disagreed with Weed's interpretation and recomputed his tax liability to include the separation pay shown on the W–2 form. On June 4, 1992, the DOR issued a Notice of Change in Your Tax to Weed, seeking $526.95 in additional tax and interest. Weed then filed an administrative appeal with the DOR. After receiving a letter from the DOR advising him that the administrative appeal was stayed pending the resolution of the federal suit against IBM, Weed filed the present appeal against the DOR.[2]

While the record is clear as to how Weed's state return was handled, this does not hold true for Weed's federal return, which received varied interpretations by the IRS. In contrast to the DOR, the IRS originally granted Weed a refund. But in 1995, after several years had passed, the IRS recalculated Weed's 1991 income tax liability by including the entire amount of gross wages shown on the W–2 form, and notified him that he owed an additional $961 in federal taxes. After Weed responded to the IRS by letter, the IRS in turn responded to Weed, advising him that the 1991 tax year was closed with no additional tax due. In July 1995, Weed paid the $961 owing to the IRS and also filed an amended return for 1991 claiming a $961 refund. In August 1995, he received the refund. But Weed's case was not closed. On September 12, 1995, the IRS assessed Weed additional income tax for 1991 based on the gross wages shown on the W–2 form.

Meanwhile, on August 17, 1995, the tax court heard Weed's appeal. The tax court concluded that Weed constructively received the separation check as income in 1991 and that the actions taken to date by the IRS did

not foreclose the Commissioner from adjusting Weed's 1991 Minnesota taxable income. Weed then moved for a new trial, for recusal of the judge, and for relief from judgment, which the tax court denied.

## II.

■ Weed first argues that the constructive receipt doctrine does not apply due to his unresolved legal dispute with IBM. Weed asserts that the tax court's conclusion that he constructively received the check was erroneous because he would have jeopardized his legal position in his employment dispute with IBM by cashing the check.

■ Because Minnesota net income is defined statutorily as federal taxable income pursuant to Minn.Stat. § 290.01, subd. 19 (1994), resolution of this issue turns on federal law regarding constructive receipt. Under the Internal Revenue Code, a taxpayer is required to include and report in his tax return all income which is actually or constructively received by him during the year covered by the tax return. *See Baxter v. Commissioner*, 816 F.2d 493, 494 (9th Cir. 1987). A taxpayer may receive income in a particular year, even if it is not reduced to his possession in that year, if he constructively receives the income. *Id.* Treasury regulations provide that income is constructively received by a taxpayer if it is:

> credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given.

Treas. Reg. § 1.451–2. However, income is not constructively received if the taxpayer's control of its receipt is subject to "substantial limitations or restrictions." *Id.*

In determining that Weed's separation check was taxable income, the tax court cited two cases applying the constructive receipt doctrine where a taxpayer received but did not cash or return a check. In *Hedrick v.*

---

**2.** By letter dated June 1, 1995, counsel for the DOR advised Weed that a mathematical mistake was made when the 1991 Minnesota income tax was calculated for the Notice of Change in Your Tax. The letter stated that rather than the $526.95 shown on the original Notice, the correct amount of tax plus interest should have been $81.95.

*Commissioner,* a retiree received but did not cash or return pension checks. The retiree feared that by cashing the checks he would attain pensioner status which would make it more difficult for him to obtain employment. 154 F.2d 90 (2nd Cir.1946), *cert. denied,* 329 U.S. 719, 67 S.Ct. 53, 91 L.Ed. 623 (1946). The Second Circuit Court of Appeals concluded that the retiree constructively received the checks because the retiree received the checks and was free to cash the checks if he wished, whether or not he actually did so. *Id.* at 91.

In *Harrison v. Commissioner,* a taxpayer executrix of an estate received a commission check from the estate, which she refused to cash. 62 T.C.M. (PH) 1047 (1955). The check represented the taxpayer's share based on the second will of the testator, which had been admitted to probate. The taxpayer contended, however, that the first will was the only valid one, and refused to cash the check because it represented her share from the second will, which she considered invalid. *Id.* The tax court held that the taxpayer constructively received the check as income because "[o]ne who actually receives a check which would otherwise have the quality of income may not escape the income tax consequences by deliberately failing to cash it." *Id.* at 1048. The court also noted that the taxpayer might have been able to avoid any tax consequences by declining to accept the check. *Id.*

■■■ Weed argues that *Hedrick* and *Harrison* are not dispositive because he feared that cashing the separation check would jeopardize his legal position with IBM because it could be interpreted as a settlement. Weed argues that this fear placed a "substantial limitation or restriction" on his income such that the constructive receipt doctrine does not apply. Under federal tax law, where a taxpayer demonstrates that his acceptance of a check would compromise his legal posture with respect to a disputed claim, and he refuses to accept the check in a reasonable attempt to protect his legal posi-

tion, the taxpayer will not be deemed to have constructively received the amount tendered and refused. *Stoller v. Commissioner,* 46 T.C.M. 345 (1983) (citing *Bones v. Commissioner,* 4 T.C.M. 415, 420, 1944 WL 42 (1944)). Under these circumstances, the taxpayer's receipt of a check is considered to be "subject to substantial limitations or restrictions." If the taxpayer returns the check to its maker, the amount of the check cannot be deemed to have been constructively received. *Id. Stoller* establishes that Weed can prevail only if he can demonstrate that cashing the separation check would have constituted accord and satisfaction[3] of his disputed claim with IBM.

■■■ Under Minnesota law, accord and satisfaction acts to discharge a contract or cause of action. Accord and satisfaction "is itself an executed contract, and it may be expressed or implied from circumstances which clearly and unequivocally indicate the intention of the parties." *Roaderick v. Lull Eng'g Co.,* 296 Minn. 385, 389, 208 N.W.2d 761, 764 (1973). Accord and satisfaction may be achieved through the use of a negotiable instrument such as a check. Minn.Stat. § 336.3–311 (1994). However, accord and satisfaction will operate to discharge a cause of action only if "the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a *conspicuous statement* to the effect that the instrument was tendered as full satisfaction of the claim." *Id.* (emphasis added).

Weed argues that the constructive receipt doctrine should not apply due to his legal dispute with IBM. However, there is no evidence to support his contention that the separation check which he received purported to represent the entire amount that was due him from IBM. Nor did the separation check contain any "conspicuous statement" that his negotiation of the check would constitute "full satisfaction" of his age discrimination claim as required by Minn.Stat. § 336.3–311(b). Rather, the check simply contained

---

3. The more appropriate term is compromise and settlement, which refers to an agreement made between two or more persons as a settlement of matters in dispute between them. Accord and satisfaction is used in this opinion, however, for it is the term used in the U.C.C., as codified at Minn.Stat. § 336.3–311, as well as relevant cases of this court.

the term "separation"; it did not contain any language stating that endorsement acknowledged full payment, satisfaction, or indicating that the check was offered in consideration of any waiver or agreement by Weed. We agree with the tax court and hold that the constructive receipt doctrine applies to the check received but not cashed by Weed because Weed has failed to demonstrate any "substantial limitation or restriction" on his income. *See Stoller*, 46 T.C.M 345; *see also Lundeen v. Cozy Cab. Mfg. Co.*, 288 Minn. 98, 101, 179 N.W.2d 73, 76 (1970) (cashing weekly paychecks not accord and satisfaction of obligation to pay commission because check not given with expression of intention that cashing checks would constitute full payment of disputable amount); *Stevens v. Minneapolis Fire Dept. Relief Ass'n.*, 219 Minn. 276, 17 N.W.2d 642 (1945) (defendant's tender to plaintiff each month of a check reciting that it was full payment of pension due for the month, and plaintiff's cashing of check, constituted accord and satisfaction). Weed's mistaken belief that cashing the check would jeopardize his legal claims with IBM should not serve, following *Stoller*, to relieve him of the tax consequences of retaining the check.

### III.

■ Weed next argues that because the IRS has already determined that the separation payment is not includable in his 1991 income, the Commissioner is foreclosed from adjusting his 1991 tax liability on the grounds that the IRS determination is binding on the Commissioner. This issue was raised at the tax court, which concluded that because the IRS had not issued a final decision, the Commissioner was not foreclosed from making its own determination of Weed's Minnesota taxable income.

The Commissioner takes issue with Weed's factual assumptions and legal interpretations. As a factual matter, the Commissioner argues that the IRS did notify Weed that the separation pay was taxable and assessed tax on the separation pay. The Commissioner cites as support the tax court's finding that on September 12, 1995, "the IRS assessed [Weed] additional income tax for 1991 based on the gross wages shown on the W-2 form," which form included the separation pay as income. As a legal matter, the Commissioner asserts that even if the IRS had made a determination of Weed's taxable income, the Commissioner would not be foreclosed from adjusting Weed's 1991 Minnesota taxable income. Although acknowledging that Minnesota net income is defined statutorily as federal taxable income as defined in Minn.Stat. § 290.01, subd. 19, the Commissioner asserts that the statute requires nothing more than that the state adopt the "correct federal taxable income," not the "varying interpretations—some correct and some incorrect—of every individual federal auditor."

For support, the Commissioner cites *Specktor v. Commissioner of Revenue*, 308 N.W.2d 806 (Minn.1981), where this court considered whether the Commissioner of Revenue was permitted to adjust a taxpayer's Minnesota gross income notwithstanding the federal government's failure to make a similar adjustment. *Id.* at 808. In *Specktor*, we concluded that although Minnesota gross income is defined as federal adjusted income, the Minnesota Commissioner of Revenue may adjust a taxpayer's gross income based on its own investigation of the taxpayer. *Id.* at 807-08. We rejected the argument that federal adjusted gross income was conclusive, observing that such an approach would nullify several state statutes which give the Commissioner of Revenue authority to examine tax returns and make assessments if deficiencies are found. *Id.* at 808. Moreover, if federal gross income was controlling, state tax authorities would be powerless to correct the taxpayer's return if the federal adjusted gross income were the result of a mistake or fraud. *Id.* at 808-09. We thus held that "Minnesota's definition of gross income as federal adjusted gross income refers to the *correct* federal adjusted gross income." *Id.* at 809 (emphasis added). Following *Specktor*, we hold that the Commissioner should not be foreclosed from making a determination regarding Weed's 1991 Minnesota taxable income.

### IV.

■ Weed's final argument is that the tax court judge should have recused herself

**290**

from the case pursuant to Minn. R. Civ. P. 63.02 because she was the Commissioner of Revenue when the Notice was issued. Weed also finds fault with the judge's argument that he should have moved for recusal before trial as required by Minn. R. Civ. P. 63.03. Weed claims that he did not do so before trial because he did not know of the judge's apparent conflict of interest brought on by "the conspiracy of silence between the judge and the [C]ommissioner's attorney." Weed finds it especially unfair that the "conspirators now argue that they should be permitted to savor the fruits of the poisonous tree because the appellant did not have the resources to chop down the tree before it reached maturity."

Weed's arguments fail to bear fruit. Because the tax court judge had no personal involvement in any action related to Weed while serving as Commissioner of Revenue, the mere fact that she served as the Commissioner of Revenue is not sufficient grounds for removal under Minn. R. Civ. P. 63.02. *See State v. American Fundamentalist Church,* TC 89–2961, 1992 WL 154138 (Minn. Tax Ct. June 16, 1992). Weed's argument that he did not move for recusal before trial as required by Minn. R. Civ. P. 63.02 due to an alleged "conspiracy of silence" between the judge and the Commissioner's attorney similarly is without merit. Weed had four months before trial in which to move for recusal, giving him ample time to discover that one of the three tax court judges had previously served as the Commissioner of Revenue. Finally, Weed has presented no "affirmative showing of prejudice on the part of the judge" such that removal would be appropriate under Minn. R. Civ. P. 63.03.

Affirmed.

PAGE, Justice (concurring specially).

While I agree with the court's resolution of Mr. Weed's substantive claims, I write separately to voice my concern about the propriety and the wisdom of having the person in whose name a tax assessment and collection action originated sit in judgment of the taxpayer's claims. This situation is one where the tax court judge's impartiality might rea-

sonably be questioned, raising the appearance of impropriety.