# United States Tax Court

T.C. Memo. 2024-5

CHRISTOPHER R. PANGELINA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11350-19.                    Filed January 11, 2024.

————

Christopher R. Pangelina, pro se.

*Michael Skeen*, *Daniel Z. Nettles*, and *John M. Duddles*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, *Judge*: Respondent determined the following deficiencies, penalties, and additions to tax with respect to petitioner's federal income tax for taxable years 2010–17 (years at issue):

| Year | Deficiency | Penalties/Additions to Tax | |
|------|-----------|----------------|----------------|
|      |           | *§ 6662(a)* | *§ 6651(a)(1)* |
| 2010 | $42,915 | $8,583 | $10,728 |
| 2011 | 91,923 | 18,384 | 22,980 |
| 2012 | 13,938 | 2,787 | 3,389 |
| 2013 | 14,748 | 2,949 | 3,687 |
| 2014 | 678 | — | 169 |
| 2015 | 5,674 | 1,134 | 1,418 |
| 2016 | 7,096 | 1,419 | 1,774 |
| 2017 | 2,100 | — | 472 |

**[\*2]** Respondent also determined a section 6651(a)(2)[1] addition to tax of $126 for 2017. Determinations with respect to 2017 were made by means of a substitute for return (SFR) prepared by respondent pursuant to section 6020(b).

The deficiencies for the years at issue result from certain adjustments made to petitioner's gross receipts and/or the disallowance of all or part of certain deductions for business expenses reported on petitioner's Schedules C, Profit or Loss From Business.

After concessions[2] the issues for decision are whether petitioner (1) is entitled to deduct certain business expenses reported on Schedules C for all years at issue; (2) failed to report taxable interest income in the amounts respondent determined for 2010, 2011, and 2012; (3) failed to report gross receipts from his business as income for 2017; (4) is entitled to head of household filing status for 2017; (5) is entitled to the additional child tax credit for 2017; (6) is entitled to the earned income tax credit for 2017; (7) is liable for additions to tax pursuant to section 6651(a)(1) for all years at issue; (8) is liable for an addition to tax pursuant to section 6651(a)(2) for 2017; and (9) is liable for accuracy-related penalties pursuant to section 6662(a) for 2010, 2011, 2012, 2013, 2015, and 2016.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The Stipulation of Facts and the attached Exhibits are incorporated herein by this reference. Petitioner resided in California when he timely filed his Petition.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent determined increases in petitioner's reported gross receipts of $23,509 for 2010, $309,209 for 2011, and $2,137 for 2012. These adjustments were based on third-party information returns for 2010 and 2012. Respondent's determination for 2011 was based on a bank deposits analysis conducted for that year. Petitioner conceded each of these increases.

[*3] *Overview*

During the years at issue petitioner operated a tiling business as a sole proprietor under the name B.C. Tile (BC). Petitioner reported income and expenses attributable to BC on Schedules C.

At a time not disclosed in the record, a revenue agent with respondent's Small Business and Self-Employed (SB/SE) Division commenced an examination of petitioner's federal income tax returns for 2010–16. The SB/SE agent concluded that petitioner's reported gross receipts for BC for 2010, 2011, and 2012 should be increased; certain business expense deductions petitioner claimed for BC for 2010, 2012, 2013, 2014, 2015, and 2016 should be disallowed; and various penalties and additions to tax for 2010–16 should be imposed. Since petitioner had not filed a return for 2017 by March of 2019, the SB/SE agent prepared an SFR on petitioner's behalf pursuant to section 6020(b) on March 19, 2019. The SFR attributed to petitioner gross receipts of $13,401 and accorded him single filing status, a personal exemption, and the standard deduction.

On March 19, 2019, the SB/SE agent completed a Civil Penalty Approval Form for the imposition of accuracy-related penalties for 2010–13, 2015, and 2016. The penalties were imposed on the bases of underpayments attributable to substantial understatements of income tax and negligence. The agent's immediate supervisor signed the Civil Penalty Approval Form on March 22, 2019. The SB/SE Division issued petitioner a notice of deficiency covering the years at issue on May 1, 2019.

*2010*

Petitioner filed his return for 2010, which had been prepared by a paid preparer, on January 30, 2017; it was due April 18, 2011. Petitioner reported $286,174 in gross income from BC. Respondent determined that petitioner had failed to report $34 in taxable interest and disallowed the $100,246 deduction petitioner claimed under "other expenses" for contractors. He let stand $154,380 in other claimed Schedule C deductions.

As substantiation for the disallowed deduction, petitioner proffered the 2010 monthly statements for the bank account he maintained for BC.

**[\*4]** *2011*

Petitioner filed his return for 2011, which had been prepared by a paid preparer, on October 16, 2017; it was due October 15, 2012, pursuant to a granted extension of time to file. Petitioner reported $36,806 in gross income from BC. Respondent determined that petitioner had failed to report $31 in taxable interest but did not disallow any Schedule C deductions.

*2012*

Petitioner filed his return for 2012, which had been prepared by a paid preparer, on January 30, 2017; it was due October 15, 2013, pursuant to a granted extension of time to file. Petitioner reported $130,941 in gross income from BC. Respondent determined that petitioner had failed to report $18 in taxable interest and disallowed Schedule C deductions petitioner claimed for $18,259 in expenses classified as rent or lease of other business property and $34,791 for expenses classified as wages. He let stand $75,441 in other claimed Schedule C deductions.

As substantiation for the disallowed deductions, petitioner proffered a profit and loss statement for 2012 that he prepared in October 2020, but he was unable to produce the underlying records used to produce it. He also proffered the 2012 monthly statements for the bank account he maintained for BC.

*2013*

Petitioner filed his return for 2013, which had been prepared by a paid preparer, on January 30, 2017; it was due April 15, 2014. Petitioner reported $130,941 in gross income from BC. Respondent disallowed Schedule C deductions petitioner claimed for expenses classified as other interest of $5,008, repairs and maintenance of $18,259, and wages of $34,391. He let stand $73,878 in other claimed Schedule C deductions.

As substantiation for the disallowed deductions, petitioner proffered the 2013 monthly statements for the bank account he maintained for BC, but no profit and loss statement.

**[\*5]** *2014*

Petitioner filed his return for 2014, which had been prepared by a paid preparer, on October 15, 2017; it was due April 15, 2015. Petitioner reported $18,082 in gross income from BC. Respondent disallowed the entire $61,468 deduction petitioner claimed on Schedule C for car and truck expenses and $2,948 of the $6,175 deduction claimed for other expenses—payroll. He let stand the remaining $13,284 in deductions claimed on Schedule C.

As substantiation for the disallowed deductions, petitioner proffered a profit and loss statement for 2014 that he prepared in October 2020, but he was unable to provide the underlying records used to produce it. He also proffered the 2014 monthly statements for the bank account he maintained for BC.

*2015*

Petitioner filed his return for 2015, which had been prepared by a paid preparer, on March 28, 2018; it was due October 17, 2016, pursuant to a granted extension of time to file. Petitioner reported $48,269 in gross income from BC. Respondent disallowed the Schedule C deduction petitioner claimed for $49,786 in car and truck expenses and $12,638 of the $16,456 deduction claimed for contractor expenses. He let stand the remaining $20,910 in claimed Schedule C deductions.

As substantiation for the disallowed deductions, petitioner proffered a profit and loss statement for 2015 that he prepared in October 2020, but he was unable to provide the underlying records used to produce it. He also proffered the 2015 monthly statements for the bank account he maintained for BC.

*2016*

Petitioner filed his return for 2016, which had been prepared by a paid preparer, on April 9, 2018; it was due April 18, 2017. Petitioner reported $45,477 in gross income from BC. Respondent disallowed the Schedule C deductions claimed for $36,683 in car and truck expenses, $17,060 in expenses for rent or lease of other business property, and $7,377 for contractor expenses. He let stand the remaining $7,451 in claimed Schedule C deductions.

**[\*6]**  As substantiation for the disallowed deductions, petitioner proffered a profit and loss statement for 2016 that he prepared in October 2020, but he was unable to provide the underlying records used to produce it.  He also proffered the 2016 monthly statements for the bank account he maintained for BC.

*2017*

As petitioner failed to file a return for 2017, the SB/SE agent prepared an SFR on petitioner's behalf pursuant to section 6020(b) and notified him of the same on March 19, 2019.  Petitioner has not paid the amounts shown as due on the SFR.  The SFR adjustments were incorporated in the notice of deficiency and included determinations that petitioner had unreported gross receipts of $13,401 and was entitled to single filing status and one personal exemption.

On February 1, 2021, two days before the first scheduled trial date in this case, petitioner provided respondent's counsel with an unsigned return for 2017.  The return, which had been prepared by a paid preparer, reports his filing status as head of household and claims a personal exemption for himself and dependency exemptions for three children.  The return also claims the additional child tax credit and the earned income tax credit.  Finally, Schedule C[3] of the unsigned return reports that BC had gross receipts of $79,781 (offset by a $13,605 cost of goods sold) and claims the following deductions for expenses:

---

[3] The Schedule C attached to the unsigned 2017 return is incomplete in the stipulated Exhibit in the record.  However, that Exhibit also contains a complete copy of the federal Schedule C that is attached to the unsigned California income tax return that is included as part of the Exhibit.

**[*7]**

| Expense | Amount |
| --- | --- |
| Advertising | $1,129 |
| Commissions and fees | 5,033 |
| Depreciation and § 179 deduction | 321 |
| Insurance | 3,005 |
| Legal and professional services | 400 |
| Office expense | 216 |
| Rent or lease other business property | 24,143 |
| Repairs and maintenance | 2,053 |
| Meals and entertainment | 816 |
| Utilities | 1,787 |
| Wages | 4,316 |
| Other expenses | 8,315 |
| **Total** | **$51,534** |

As substantiation for the disallowed deductions, petitioner proffered a profit and loss statement for 2017 that he prepared in October 2020, but he was unable to provide the underlying records used to produce it. He also proffered the February and March 2017 monthly statements for the bank account he maintained for BC.

OPINION

I.    *Burden of proof*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. *See* Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a), in certain circumstances the burden of proof may shift from the taxpayer to the Commissioner. Petitioner has not claimed or shown that he has satisfied the requirements of section 7491(a) so as to shift the burden of proof to respondent as to any relevant factual issue.

II.    *Schedule C deductions*

A.    *Applicable law*

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. *See INDOPCO, Inc. v.*

**[\*8]** *Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).  A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  *See* § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  § 6001; *Hradesky*, 65 T.C. at 89–90.

Under section 162(a) a deduction is allowed for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business."  An ordinary expense is one that commonly or frequently occurs in the taxpayer's line of business.  *Deputy v. du Pont*, 308 U.S. 488, 495 (1940).  A necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business.  *Commissioner v. Heininger*, 320 U.S. 467, 471 (1943); Treas. Reg. § 1.162-1(a).

Generally, if a taxpayer provides sufficient evidence that he or she has incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court may estimate the amount and allow a deduction to that extent.  *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930).  For the Court to estimate the amount of an expense, there must be some basis upon which an estimate may be made.  *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985).  The Court may not estimate expenses under *Cohan* in situations where section 274 imposes heightened substantiation requirements.  *See* § 274(d); *Sanford v. Commissioner*, 50 T.C. 823, 827 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969); Temp. Treas. Reg. § 1.274-5T(a).

Section 274 imposes strict substantiation rules on certain specified expenses.  No deductions under section 162 shall be allowed for "any traveling expense (including meals and lodging while away from home)," or "listed property," as defined in section 280F(d)(4), "unless the taxpayer substantiates [them] by adequate records or by sufficient evidence corroborating the taxpayer's own statement."  § 274(d)(1), (3).  Listed property includes passenger automobiles and other property used for transportation.  § 280F(d)(4)(A)(i) and (ii).  Thus, substantiation of any expense categorized as car and truck or meals and entertainment is governed by section 274.

**[\*9]** To meet these strict substantiation rules, a taxpayer must substantiate by adequate records or by sufficient evidence corroborating his own statement: (1) the amount of the expense, (2) the time and place the expense was incurred, and (3) the business purpose of the expense. § 274(d). To substantiate by adequate records, the taxpayer must provide (1) an account book, a log, or a similar record, and (2) documentary evidence, which together are sufficient to establish each element of an expenditure. Temp. Treas. Reg. § 1.274-5T(c)(2)(i). Documentary evidence includes receipts, paid bills, or similar evidence. Treas. Reg. § 1.274-5(c)(2)(iii). To substantiate by sufficient evidence corroborating the taxpayer's own statement, the taxpayer must establish each element by his or her own statement and by documentary evidence or other direct evidence. Temp. Treas. Reg. § 1.274-5T(c)(3)(i).

B.   *2010*

The bank records petitioner proffered to substantiate the disallowed $100,246 Schedule C deduction for contractors do not do so. Most of the entries are for debit card purchases or ACH debits for certain identified commercial establishments. We are unable to see how such transactions could constitute payments to contractors. There are also entries for payments of checks, but these show only a check number and an amount. Without any reference to a payee or a purpose, these check payment entries do not substantiate payments to contractors. Petitioner has failed to substantiate the deduction, and we sustain respondent's disallowance of it.

C.   *2011*

No Schedule C deductions were disallowed for this year.

D.   *2012*

The 2012 profit and loss statement and bank statements for that period, which petitioner proffered to substantiate the disallowed $18,259 deduction for rent or lease payments and the disallowed $34,791 deduction for wage payments, are insufficient to do so. Petitioner prepared the 2012 profit and loss statement in October 2020, and he concedes that he does not have any records (other than the bank statements) to substantiate the entries. The 2012 profit and loss statement contains numerous discrepancies as between the statement itself and the corresponding entries on petitioner's 2012 return. This may suggest that petitioner's return preparer found fault with some of the profit and loss statement entries. Moreover, there are also

[*10] discrepancies between the 2012 profit and loss statement figures and the bank statements for that period. The determinations in the notice of deficiency to disallow the claimed Schedule C deductions for rent or lease payments and wage payments are presumptively correct, and petitioner bears the burden of proof to show that the determinations are incorrect. *See, e.g., Baxter v. Commissioner*, 816 F.2d 493, 495 (9th Cir. 1987), *aff'g in part, rev'g and remanding in part* T.C. Memo. 1985-378. The unreliable profit and loss statements petitioner proffered are insufficient to demonstrate error in the determinations, and we accordingly sustain them.

### E.     *2013*

Petitioner did not proffer a profit and loss statement for 2013 but only the monthly statements for the bank account he maintained for BC for that year. We are unable to find any entries in those bank statements that provide clear substantiation for the claimed deductions for expenses classified as other interest of $5,008, repairs and maintenance of $18,259, and wages of $34,391. We accordingly sustain respondent's determinations to disallow those deductions.

### F.     *2014*

Petitioner proffered both a 2014 profit and loss statement and BC's monthly bank statements for that period to substantiate the $61,468 deduction claimed for car and truck expenses and the $2,948 deduction claimed for payroll expenses. But the proffered substantiation is insufficient. Petitioner prepared the profit and loss statement in October 2020 and concedes that he does not have any of the supporting documentation (other than the bank statements) used to prepare it. The discrepancy between the 2014 profit and loss statement and the 2014 return is substantial for the car and truck expenses. Whereas the combined figure for "Auto and Truck Expenses" and for "Fuel" on the profit and loss statement is $3,674.03, the amount claimed on the return for car and truck expenses is $61,468. As for the amounts claimed for payroll expenses, there is no traceable connection between the checks that were written from the bank account and amounts recorded as payroll on the profit and loss statement. The foregoing is insufficient to overcome the presumptive correctness of the notice of deficiency's determinations to disallow the claimed deductions for car and truck expenses and payroll expenses. We accordingly sustain them.

**[\*11]** G.     *2015*

Petitioner proffered both a 2015 profit and loss statement and BC's monthly bank statements for that period to substantiate the $49,786 deduction claimed for car and truck expenses and the $12,638 deduction claimed for contractor expenses. Petitioner prepared the profit and loss statement in October 2020 and concedes that he does not have any of the supporting documentation (other than the bank statements) used to prepare it. The discrepancy between the 2015 profit and loss statement and the 2015 return is substantial for the car and truck expenses. Whereas the combined figure for "Auto and Truck Expenses" and for "Fuel" recorded in the profit and loss statement is $5,376.39, the amount claimed on the return for car and truck expenses is $49,786. As for the amounts claimed for contractors, there is no traceable connection between checks that were written from the bank account and amounts recorded as payroll on the profit and loss statement. (There are no entries on the 2015 profit and loss statement for contractors.) The foregoing is insufficient to overcome the presumptive correctness of the notice of deficiency's determinations to disallow the claimed deductions for car and truck expenses and contractor expenses. We accordingly sustain them.

H.     *2016*

Petitioner proffered both a 2016 profit and loss statement and BC's monthly bank statements for that period to substantiate the $36,683 deduction claimed for car and truck expenses, the $17,060 deduction claimed for rent or lease of other business property expenses, and the $7,377 deduction claimed for contractor expenses. Petitioner prepared the profit and loss statement in October 2020 and concedes that he does not have any of the supporting documentation (other than the bank statements) used to prepare it.

The discrepancy between the 2016 profit and loss statement and the 2016 return is substantial for the car and truck expenses. Whereas the combined figure for "Auto and Truck Expenses" and for "Fuel" recorded in the profit and loss statement is $5,949.08, the amount claimed on the return for car and truck expenses is $36,683. Given this discrepancy, the proffered records are insufficient to substantiate the deduction. We accordingly sustain respondent's determination disallowing it.

[*12] With respect to the deduction claimed for expenses for rent or lease of other business property, there is in fact consistency between the profit and loss statement, the monthly bank statements, and the return. The profit and loss statement and the monthly bank statements both record nine payments totaling $17,060, which is the figure claimed on the return. The profit and loss statement records that the nine payments were made to Debbie Parson, whereas the monthly bank statements merely indicate that nine checks (totaling $17,060) were issued on dates corresponding to the dates in the profit and loss statement but without any indication of the payee. Without any testimony or other evidence establishing who Debbie Parson is or the purpose of the payments, the foregoing records are insufficient to substantiate any rental expense with a business purpose. We accordingly sustain respondent's determination to disallow it.

With respect to the deduction claimed for $7,377 in contractor expenses, the 2016 profit and loss statement contains a section entitled "Payroll Expenses," the entries of which total $7,376.50. Putting aside the issue of whether a payroll expense, typically associated with employees, could be taken to indicate payments to contractors (an issue that we need not decide), the greater shortcoming in the probative value of the 2016 profit and loss statement—in addition to the fact that it was prepared in October 2020—lies in the 2016 monthly bank statements that purportedly support the profit and loss statement entries. The majority of the payroll entries in the profit and loss statement tie back to ATM withdrawals in the bank statements, while the remainder tie back to checks, but the check entries in the bank statements do not identify the payees. The profit and loss statement does identify an individual payee for each entry, but even if we were to accept the designated payees given in the profit and loss statement, there is no testimony or other evidence to establish who the payees were (other than petitioner himself, and his ATM withdrawals could have been for a multitude of purposes other than salary) or the nature of the services for which payment was made. On the basis of the foregoing, we conclude that petitioner has failed to substantiate the deduction for contractor expenses and accordingly sustain respondent's disallowance of it.

III.   *2017*

When petitioner had not filed a return for 2017 by sometime in 2019, the SB/SE agent prepared an SFR pursuant to section 6020(b) and notified petitioner of the same on March 19, 2019. The SFR adjustments were   incorporated   in   the   notice   of   deficiency   and   included

**[*13]** determinations that petitioner had unreported gross receipts of $13,401, and was entitled to single filing status and one personal exemption.

In the course of the proceedings in this case, petitioner submitted to respondent's counsel an unsigned Form 1040, U.S. Individual Income Tax Return, for 2017, and it is a stipulated Exhibit. An unsigned return submitted in a deficiency proceeding such as this has no legal effect. *Selgas v. Commissioner*, 475 F.3d 697, 700–01 (5th Cir. 2007). Nevertheless, in view of petitioner's pro se status, we will treat the positions taken on the return, where appropriate, as claims pleaded by petitioner in the case, as the parties effectively tried them by consent. *See* Rule 41(b)(1). The unsigned return reports gross receipts from BC on Schedule C of $79,781 and claims various expenses totaling $51,534. The return also reports petitioner's filing status as head of household and claims dependency exemptions for three children as well as a personal exemption for petitioner. In addition, the return claims the additional child tax credit and the earned income tax credit.

### A.     *Unreported gross receipts*

Where a notice of deficiency has determined that the taxpayer had unreported income, it is presumptively correct so long as the Commissioner introduces some substantive evidence that the taxpayer received unreported income. *Hardy v. Commissioner*, 181 F.3d 1002, 1004 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97; *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985). Here, the notice of deficiency and a Wage and Income Transcript for petitioner's 2017 taxable year both reference the payment of income to petitioner by third parties. That is sufficient to meet respondent's burden of production with respect to the unreported income. *See Nelson v. Commissioner*, T.C. Memo. 2018-95; *Banister v. Commissioner*, T.C. Memo. 2008-201, *aff'd*, 418 F. App'x 637 (9th Cir. 2011). Moreover, petitioner has not disputed that he received gross receipts for 2017; indeed, in his unsigned return he reported that BC had gross receipts of $79,781. Accordingly, we sustain respondent's determination that petitioner had unreported gross receipts of $13,401.

### B.     *Filing status, exemptions, and credits*

Petitioner proffered no evidence to support his claims on the unsigned return that he is entitled to head of household filing status, dependency exemptions for three children, the additional child tax credit, or the earned income credit. We accordingly sustain respondent's

**[\*14]** determination that petitioner is entitled to single filing status and one personal exemption. We conclude that petitioner has not shown entitlement to head of household filing status, dependency exemptions for three children, or any credits.

### C. *Schedule C deductions*

The expenses listed on Schedule C of petitioner's unsigned return lack substantiation. Petitioner proffered a profit and loss statement for 2017, but he proffered bank statements only for the months of February and March 2017. Consequently, for many of the expenses listed on the profit and loss statement and carried over onto the return, there is no proof that the payment of the expense was actually made. This absence of proof of payment covers the claims for legal and professional services, office expense, repairs and maintenance, and various items in the "other expenses" category, including garbage, parking fees, and bridge toll. In other cases, an expense listed on Schedule C has no corresponding entry on the profit and loss statement to support it, or there is a significant (and unexplained) discrepancy between the figure on Schedule C and the figure on the profit and loss statement. In this category are the expenses for commissions and fees, utilities, wages, and certain items grouped under other expenses (telephone and gas). As for the remaining expenses—namely, rent or lease of other business property, advertising, insurance, internet, and miscellaneous—the two months of bank statements are insufficient to establish that these expenses were actually paid in 2017. Consequently, petitioner has failed to show entitlement to any deduction for the expenses listed on Schedule C of the unsigned return for 2017.

### IV. *Unreported interest income*

Respondent also determined that petitioner had unreported taxable interest income of \$34, \$31, and \$18 for 2010, 2011, and 2012, respectively. As noted, where a notice of deficiency has determined unreported income, the Commissioner must introduce some substantive evidence that the taxpayer received unreported income in order for the determination to be presumed correct. The record includes Wage and Income Transcripts for petitioner's 2010, 2011, and 2012 taxable years, and they record that an identified third-party payor filed information returns reporting the payment of interest to petitioner for the foregoing amounts and years. This satisfies respondent's burden of production, rendering the determinations presumptively correct. Moreover, at trial petitioner testified that he did not dispute these amounts. We

[*15] accordingly sustain respondent's determination that petitioner received unreported taxable interest in the specified amounts for 2010, 2011, and 2012.

V.    *Penalties and additions to tax*

Respondent determined that petitioner is liable for accuracy-related penalties under section 6662(a) for 2010–13, 2015, and 2016.  He also determined that petitioner is liable for additions to tax under section 6651(a)(1) for failure to timely file for all years at issue and under section 6651(a)(2) for failure to timely pay for 2017.  The Commissioner bears the burden of production with respect to any individual taxpayer's liability for any penalty or addition to tax imposed by the Code. § 7491(c).  To meet this burden, the Commissioner must come forward with sufficient evidence indicating that the imposition of the penalty is appropriate.  *See Higbee v. Commissioner*, 116 T.C. 438, 446–47 (2001). Once the Commissioner meets his burden of production, the taxpayer bears the burden of proving error in the determination, including evidence of reasonable cause or other exculpatory factors.  *Id.*

A.    *Accuracy-related penalties*

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax required to be shown on a return that is attributable to any substantial understatement of income tax.  A substantial understatement of income tax exists if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000.  *See* § 6662(d)(1).

For each of the taxable years 2010–13, 2015, and 2016, we have sustained deficiencies (and thus understatements of tax) that exceed 10% of the tax required to be shown on the return.  Thus, respondent has met his burden of showing that imposition of an accuracy-related penalty is appropriate for each of those years.[4]

Respondent's burden of production for an accuracy-related penalty under section 6662(a) also includes demonstrating compliance with the procedural requirements of section 6751(b)(1).  *See Graev v. Commissioner*, 149 T.C. 485, 492–93 (2017), *supplementing and*

---

[4] In view of our conclusion regarding the substantial understatement basis for the accuracy-related penalty, we find it unnecessary to decide whether respondent has met his burden with respect to negligence.

**[\*16]** *overruling in part* 147 T.C. 460 (2016). Section 6751(b)(1) provides that "[n]o penalty under this title [Title 26, the Internal Revenue Code] shall be assessed unless the initial determination of such assessment is personally approved (in writing) by the immediate supervisor of the individual making such determination." In interpreting the proper timing of the supervisory approval the statute requires, we apply the test of the Court of Appeals for the Ninth Circuit for cases presumptively appealable to that court, such as this one. *See Kraske v. Commissioner*, No. 27574-15, 161 T.C. (Oct. 26, 2023); *Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). The Ninth Circuit has held that written supervisory approval must occur "before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment." *Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022), *rev'g and remanding* 154 T.C. 68 (2020).

Here, the immediate supervisor of the SB/SE agent examining petitioner's returns signed a Civil Penalty Approval Form on March 22, 2019, that the latter had prepared proposing section 6662 penalties for 2010–13, 2015, and 2016 on the basis of substantial understatements of income tax and of negligence. The SB/SE Division issued petitioner a notice of deficiency covering those years on May 1, 2019. Thus, written supervisory approval for the penalties was given before assessment (assessment of these penalties not having yet occurred). We are also satisfied that respondent has met his burden of production with respect to the approving supervisor's having retained discretion to give approval when he did so, given that the issuance of the notice of deficiency (which would eliminate the supervisor's discretion) occurred after the signing of the Civil Penalty Approval Form and the fact that the notice was issued by the SB/SE Division. Issuance of the notice of deficiency by the SB/SE Division strongly suggests that the case was not transferred to the Office of Appeals, which could have terminated the supervisor's discretion to approve, because if the case had been transferred to Appeals, that office would normally have issued the notice of deficiency. *See Internal Revenue Manual* 8.2.1.9(4) (Oct. 1, 2016); *see also Kraske*, 161 T.C., slip op. at 8 (finding Commissioner satisfied burden of production to show supervisory approval where approval occurred before case was transferred to Appeals).

Petitioner has not shown that he had reasonable cause for the understatements or otherwise addressed the accuracy-related penalties. We accordingly sustain them.

[*17] B.  *Additions to tax*

Section 6651(a)(1) imposes an addition to tax if the taxpayer fails to file his or her income tax return by the required due date (including any extension of time for filing).  The addition is equal to 5% of the amount required to be shown as due on the return for each month (or fraction thereof) after the due date, up to a maximum of 25%.

For each year at issue, petitioner failed to file more than five months after the due dates for the returns.  Accordingly, respondent has met his burden of production to show that imposition of the section 6651(a)(1) addition to tax is appropriate.  The section 6751(b) supervisory approval requirement is not applicable to section 6651 additions to tax.  § 6751(b)(2).  Petitioner did not claim or show that his failure to file timely with respect to any year at issue was due to reasonable cause.  Accordingly, we sustain the section 6651(a)(1) addition to tax for each year at issue.

Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax due on a return, equal to 0.5% of the amount required to be shown as due on the return for each month the failure to pay persists, up to a maximum of 25%.  Where a taxpayer has not filed a return, the Commissioner must introduce evidence that an SFR satisfying the requirements of section 6020(b) was made.  *Wheeler v. Commissioner*, 127 T.C. 200, 210 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008).  A return made under section 6020(b) is treated as "the return filed by the taxpayer for purposes of determining the amount of the addition" under section 6651(a)(2).  § 6651(g)(2).

Respondent produced evidence that the IRS prepared an SFR satisfying the requirements of section 6020(b) for 2017 and that petitioner failed to pay the amount shown on the SFR.  Respondent has therefore met his burden of production for the addition to tax under section 6651(a)(2).  *See Burnett v. Commissioner*, T.C. Memo. 2023-46, at *6 n.7.  Petitioner has not claimed or shown reasonable cause for the failure to pay the tax shown as due on the SFR for 2017.  The section 6751(b) supervisory approval requirement is not applicable to section 6651 additions to tax.  Accordingly, we sustain the section 6651(a)(2) addition to tax for 2017.

VI.  *Conclusion*

We have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

**[\*18]**  To reflect the foregoing,

*An appropriate decision will be entered for respondent.*